UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
:
VANDYKE JOHNSON,                                    :
:
                Plaintiff,              :
:
      -against-                                    :   08 Civ. 5277 (SHS)
:
CITY OF NEW YORK,                                   :   OPINION & ORDER
COMMISSIONER OF THE NYPD or his successor;          :
P.O. DANIELLE WUBNIG, shield no. 23048,             :
in her professional and personal capacity;          :
NEW YORK UNIVERSITY;                                :
Dean of SCPS ROBERT LAPINER;                        :
NYU Investigations Manager PATRICK WING;            :
NYU Public Safety Admin. ROBERT HUGHES;             :
NYU Public Safety, RORY DEEGAN;                     :
NYU Student Affairs THOMAS GRACE                    :
:
                Defendants.             :
:
-------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

      Pro se plaintiff Vandyke Johnson, a former graduate student at New York University, brings this action against NYU and a number of its employees (collectively, the "NYU defendants") as well as against the City of New York, the Commissioner of the New York City Police Department, and Police Officer Danielle Wubnig (collectively, the "City defendants") arising from his arrest at an NYU gymnasium and subsequent prosecution on allegedly false allegations of larceny, charges of which he was ultimately acquitted at trial. In relevant part, the complaint raises claims of false arrest and

malicious prosecution pursuant to both 42 U.S.C. § 1983 and New York state law[1] and seeks monetary damages.

The City defendants have moved for summary judgment on plaintiff's section 1983 claims as well as his state law claims, arguing that as a matter of law plaintiff cannot establish a claim for malicious prosecution or false arrest under either section 1983 or state law, and accordingly, that summary judgment is appropriate. Johnson opposes the motion contending issues of material fact remain in dispute with respect to each of his claims.

Because the Court finds, with no issues of material fact in dispute, that each of plaintiff's section 1983 and state law claims fails as a matter of law with respect to the City defendants, the motion for summary judgment is granted.

## I.    BACKGROUND

The following facts are not in dispute:

### A.  The Parties

Plaintiff Vandyke Johnson was, as of August 2006, a graduate student at NYU. (Am. Compl. at I.A.)

Defendant P.O. Danielle Wubnig is a New York City police officer. (Id.; Defs.' Local Rule 56.1 Statement of Undisputed Material Facts ("Defs.' 56.1") ¶ 23.) Defendant Raymond Kelly is the Commissioner of the New York City Police Department. The City of New York is itself named as a defendant. (Am. Compl. at I.A.)

---

[1] The complaint also raises claims pursuant to 42 U.S.C. §§ 1981, 1985, 1986-88 against all defendants and a due process claim against the NYU defendants only. By Opinion & Order dated November 12, 2009, the Court dismissed all of the federal claims, including the due process claim, raised against the NYU defendants for failure to state a claim. By separate Order, the Court now dismisses Johnson's section 1981, 1985, and 1986 claims against the City defendants as well for failure to state a claim.

Also named as defendants are Robert Lapiner, the Dean of NYU's School of Continuing Professional Studies; Patrick Wing, an NYU Public Safety Investigation Manager; Robert Hughes, an NYU Public Safety Administrator; Thomas Grace of "NYU Student Affairs"; and Rory Deegan of NYU's public safety division. (Am. Compl. I.A.)

  B. Johnson's Arrest and Prosecution

This action stems from plaintiff's arrest at NYU's Coles Sports Center on August 23, 2006 on charges of larceny. Plaintiff, who was entitled to use Coles because he was an NYU graduate student, was in the men's locker room when he was accused by another patron, defendant Rory Deegan, of breaking into Deegan's locker. Deegan confronted Johnson and then called the police. (Am. Compl. at III.C; Defs.' 56.1 ¶¶ 17-18; Aff. of Rory Deegan dated Sept. 15, 2009 ("Deegan Aff.") ¶¶ 16-19, Ex. C. to Decl. of Matthew Weir dated Nov. 2, 2009 ("Weir Decl.").)

At approximately 1:09 p.m., Officer Wubnig arrived at Coles and spoke with both plaintiff and Deegan. Deegan told Officer Wubnig that he had deposited his backpack—which contained his wallet—in a locker that he secured with a personal combination lock. However, when he returned to the locker room after his workout, Deegan saw plaintiff in front of Deegan's open locker, holding Deegan's wallet, and "thumbing through" the "cash section" of the wallet and examining its contents. (Id. ¶¶ 14-18; Deegan Aff. ¶¶ 3-14.) By contrast, Johnson told Officer Wubnig that "nothing happened" and that Deegan was "bugging out," adding that "I have my own money." (Id. ¶ 21.)

Nonetheless, after inspecting the wallet and based on the information obtained from Deegan, Officer Wubnig placed Johnson under arrest and took him to the precinct. (Id. ¶¶ 20, 23.) NYU safety officials then proceeded to empty Johnson's locker at Coles,

3

which contained a bag that had metal pliers and a metal bar in it.  Both the pliers and the bar were vouchered at the precinct.  (Id. ¶ 25.)

Johnson does not dispute that Deegan found him in front of Deegan's locker holding Deegan's wallet.  (Pl.'s 56.1 ¶ 6.)  Instead, Johnson argues that Deegan's locker was open, not locked, and that he was inspecting the wallet in a good faith effort to determine its rightful owner. (Def.'s 56.1 ¶¶ 5-6; Pl.'s 56.1 ¶¶ 5-6.)  Johnson further contends that Officer Wubnig and her partner failed to properly investigate Johnson's version of the events.  Specifically, Johnson contends that Wubnig failed to interview two witnesses to the incident—Molain Saintilus and an unidentified "elderly man" –and that she failed to dust Deegan's locker and lock for fingerprints and to otherwise "preserve the integrity of the crime scene."  (Pl.'s Mem. of Law at 15.)[2]  Johnson does not dispute that his bag containing a pair of pliers had been recovered from the locker room.  (Pl.'s 56.1 ¶ 26.)

On August 24, 2006 Johnson was arraigned and, a week later, a grand jury—which had heard testimony from Wubnig and Deegan, among others—indicted Johnson on two counts of grand larceny in the fourth degree.  (Id. ¶¶ 26, 29-30.)  Johnson proceeded to trial on and, on May 9, 2007, was acquitted of all charges.  (Id. ¶ 33; Ex. F to Weir Decl.)

    C.  This Action

Plaintiff then commenced this action in May 2008 against Deegan, the City of New York, New York University, and three NYU employees, raising claims pursuant to

---

[2] While none of these factual allegations are contained in the complaint, the Court includes them here in light of its "special obligation" to pro se litigants to "search the entire record to determine if material facts remain in dispute" before granting summary judgment.  Sanders v. Dep't of Corrections, No. 07 Civ. 3390, 2009 U.S. Dist. LEXIS 7709, at *9 (S.D.N.Y. Jan. 30, 2009) (collecting cases).

42 U.S.C. §§ 1981, 1983, 1985, and 1986-88 as well New York state law.  Read most broadly and in the light most favorable to Johnson, see McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999), the complaint asserts, in relevant part, claims for false arrest and malicious prosecution pursuant to section 1983 and state law.[3]  Plaintiff subsequently filed an amended complaint adding Commissioner Kelly and two additional NYU employees as defendants.  The NYU defendants moved to dismiss the amended complaint, and, on November 12, 2009, this Court granted that motion in part, dismissing each of plaintiff's federal claims with respect to the NYU defendants.

The City defendants now move for summary judgment on each of plaintiff's claims contending principally that none presents a triable issue of fact and therefore that each can be decided as a matter of law in defendants' favor.  Specifically, the City defendants contend that Johnson's false arrest and malicious prosecution claims fail because Wubnig and the City defendants had probable cause for the arrest and for the initiation of the prosecution and that the existence of probable cause operates as a complete defense to claims of false arrest and malicious prosecution.  Johnson opposes the motion on the grounds that the existence of probable cause is an issue for the jury to decide.

---

[3] As noted, with respect to the City defendants, plaintiff's claims raised pursuant to 42 U.S.C. §§ 1981, 1985, and 1986 are dismissed by separate Order.  While the complaint purports to bring claims pursuant to section 1987, that section authorizes federal prosecutors to "institute prosecutions against all persons violating any of the provisions" of the federal criminal code. 42 U.S.C. § 1987.  Accordingly, to the extent the complaint seeks to raise a claim pursuant to section 1987, that claim is also dismissed.  Finally, the complaint also raises a claim pursuant to section 1988 against the City defendants.  That section provides for an award of attorneys' fees to a prevailing party.  Because plaintiff does not prevail on any claim against the City defendants, his request to recover fees pursuant to section 1988 is denied.

## II.  DISCUSSION

### A.  The Summary Judgment Standard

Summary judgment is appropriate if the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists where the record taken as a whole could lead a reasonable trier of fact to find for the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In determining whether a genuine issue of material fact exists, the Court "is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004).  Where the non-moving party is a pro se litigant, the court must "liberally construe his pleadings" so as to "interpret his complaint to raise the strongest arguments it suggests."  Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007).  However, even a pro se litigant "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence" in support of its factual assertions.  D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998); Sanders v. Dep't of Corrections, No. 07 Civ. 3390, 2009 U.S. Dist. LEXIS 7709, at *8-9 (S.D.N.Y. Jan. 30, 2009).

### B.  Johnson's Section 1983 Claims

To state a claim pursuant to section 1983, a plaintiff must show (1) the deprivation of a right, privilege, or immunity secured by the Constitution and laws (2) by a person acting under color of state law.  42 U.S.C. § 1983; see also Ciambriello v. County of Naussau, 292 F.3d 307, 323 (2d Cir. 2002).  Here, Johnson contends

defendants Wubnig, Kelly, and the City itself—all of whom were acting "under color of state law"—violated his rights secured by the Constitution, specifically the Fourth Amendment, in two ways: first, through a false arrest, and, second, through a malicious prosecution. The Court addresses each claim in turn.[4]

                1.        False Arrest

A section 1983 claim for false arrest turns on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Accordingly, where an arrest is made with probable cause, a section 1983 claim will not lie. Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007) (existence of probable cause to arrest "is a complete defense to an action for false arrest") (citations, quotations omitted); Weyant, 101 F.3d at 152.

Defendants contend that Wubnig had probable cause to arrest Johnson, and, therefore, that any claim for false arrest fails as a matter of law. The Court agrees. Probable cause to arrest exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Curley v. Village of Suffren, 268 F.3d 65, 69-70 (2d Cir. 2001) (quotations, citations omitted).

The existence of "'probable cause is evaluated under an objective standard,'" Luzzi v. Mack, No. 95 Civ. 9720, 1998 U.S. Dist. LEXIS 4009 at *13 (S.D.N.Y. Mar. 31,

---

[4] Because the Court finds that Johnson's claims are deficient as a matter of law with respect to all defendants, the Court does distinguish between the three City defendants for purposes of this discussion. However, as discussed further below, the standard for stating a section 1983 claim requires additional allegations with respect to defendant Kelly and the City itself which are not present in the complaint. Accordingly, Johnson's claims are deficient with respect to those two defendants for reasons above and beyond those discussed above.

7

1998) (quoting Hausman v. Fergus, 894 F. Supp. 142, 147 (S.D.N.Y. 1995)), and where no issues of material fact are in dispute the existence of probable cause may properly be determined as a matter of law on a motion for summary judgment. Weyant, 101 F.3d at 852 ("The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers."); Parkin v. Cornell University, 78 N.Y.2d 523, 529 (1991). In evaluating probable cause, courts look to the information available to the law enforcement officer at the time of the arrest and consider the "totality of the circumstances." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994) (quotations, citations omitted); Obilo v. City Univ. of N.Y., No. 01 Civ. 5118, 2003 U.S. Dist. LEXIS 2886, at * (S.D.N.Y. Feb. 23, 2003).

Here, Officer Wubnig arrested Johnson based on information she obtained through her interview of Deegan, who told her that he had seen Johnson in front of Deegan's open locker, holding Deegan's wallet, and thumbing through the cash section of it. Moreover, the record contains nothing—other than Johnson's own unsupported denials—to cast doubt on Deegan's account. Accordingly, Wubnig had "reasonably trustworthy information" that was "sufficient to warrant a person of reasonable caution" believing that "an offense"—specifically, larceny—"ha[d] been committed by the person to be arrested." See, e.g. Curley, 268 F.3d 65, 70 ("When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity."); Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) (same).

Plaintiff does not seriously dispute any of the above, arguing instead that because he was acquitted at his criminal trial, the City defendants should be precluded from "re-

8

litigating" the issue of his guilt.  As a preliminary matter, a criminal acquittal has no res judicata effect in the context of a subsequent civil suit brought against the City or individual police officers.  <u>Jenkins</u>, 478 F.3d 76, 85; <u>Brown v. New York</u>, 60 N.Y.2d 897, 898 (1983).  More importantly, an acquittal has no bearing on the issue of whether probable cause existed for the arrest which must determined based on the totality of the circumstances at the time of the arrest, including the information available to the arresting officer at that time.  <u>Pierson v. Ray</u>, 386 U.S. 547, 555 (1967); <u>Hausman</u>, 894 F. Supp. at 147. <u>Cf.</u> <u>Weyant</u>, 101 F.3d at 853 ("Under New York law . . . the favorable termination of judicial proceedings . . . is not an element of a claim for false arrest.") (internal citations omitted).   Here, as noted, based on the information available to Wubnig at the time she arrested Johnson, probable cause existed as a matter of law.

Alternatively, Johnson argues that Wubnig's investigation was insufficient because she failed to interview two additional witnesses to the alleged crime, Molain Saintilus and the "elderly man" and additionally failed to dust Deegan's locker for finger prints.  The argument is without merit.  While Johnson does not provide the Court with any factual basis for concluding that either witness would have supported his claim of innocence or that fingerprint evidence would have somehow exonerated him, once Wubnig, based on Deegan's statements, "ha[d] a reasonable basis for believing" that "probable cause existe[d]," she was "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." <u>Ricciuti v. New York City Transit Auth.</u>, 124 F.3d 123, 128 (2d Cir. 1997).

Johnson otherwise identifies neither a factual dispute nor a legal argument that would prevent the Court from determining as a matter of law that probable cause existed

9

for his arrest, and accordingly, that his false arrest claim fails. City defendants are thus entitled to summary judgment on that claim.

### 2. Malicious Prosecution

Because "freedom from malicious prosecution" has "long been" an established "constitutional right," Kinzer v. Jackson, 316 F.3d 139, a plaintiff may bring a claim pursuant to section 1983 where he can demonstrate (1) conduct by the defendant that is tortious under state law—that is, that would establish a claim for malicious prosecution under state law—and (2) a sufficient post-arraignment liberty restraint to implicate his Fourth Amendment rights. Rohman v. New York City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000).

To state a claim under New York law for the tort of malicious prosecution, a plaintiff must show (1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor. Posr v. Ct. Officer Shield # 207, 180 F.3d 409, 417 (2d Cir. 1999).

There is no dispute that the prosecution was terminated in plaintiff's favor and therefore that the fourth element is satisfied. However, defendants contend none of the other three elements are met and that Johnson's malicious prosecution claim must therefore fail as a matter of law. First, defendants contend that Johnson cannot establish that defendants "initiated" the criminal proceeding because the district attorney, not defendants, made the decision to prosecute Johnson. Second, for substantially the same reasons set forth above, defendants argue that Johnson cannot establish a lack of

10

"probable cause" for commencing the criminal proceeding. Finally, defendants argue that Johnson cannot establish that they acted with "malice."

With respect to the first element of a claim for malicious prosecution—that the defendants "initiated" a prosecution against the plaintiff—the Second Circuit has explained that "'[i]nitiation in this context is a term of art," Rohman, 215 F.3d at 217, one which has given rise to extensive interpretive case law. See, e.g., Mitchell v. Victoria Home, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006); Llerando-Phipps v. City of New York, 390 F. Supp. 2d 372, 382-83 (S.D.N.Y. 2005); Carter v. Port Auth. of N.Y. & N.J., No. 03 Civ. 8751, 2004 U.S. Dist. LEXIS 25633, at *23-24 (S.D.N.Y. Dec. 17, 2004).

The Court need not dwell on this first element, however, because even assuming Johnson could establish that defendants "initiated" the proceedings against him, he cannot make out the second necessary element of a malicious prosecution claim—a lack of probable cause to believe the proceedings would succeed. Where, as here, probable cause existed for the arrest itself, a plaintiff pursuing a malicious prosecution claim must establish that probable cause somehow "dissipated" between the time of arrest and the commencement of the prosecution. "In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996) (citing Callan v. State, 73 N.Y.2d 731 (1988)); see also Husbands v. City of New York, No. 05 Civ. 9252, 2007 U.S. Dist. LEXIS 61042, at *23 (S.D.N.Y. Aug. 16, 2007) aff'd 2009 U.S. App. LEXIS 14122 (2d Cir. June 30, 2009).

Here, Johnson makes no such showing. Indeed, Johnson identifies nothing that occurred between his arrest and prosecution that would have caused defendants to realize

11

the charges were "groundless," nor does he identify the discovery of any exculpatory "intervening fact." To the contrary, the only additional or intervening facts uncovered after Johnson's arrest further supported a finding of probable cause—notably, Johnson's backpack was recovered from the locker room by NYU officials and given to Wubnig. The backpack contained a pair of metal pliers and a metal bar—i.e., the very sorts of tools that someone who intended to break into lockers might possess. Accordingly, and with no issues of fact in dispute, the Court finds that even assuming defendants could be found to have "initiated" the criminal proceedings against Johnson, they did so with probable cause to believe the proceeding would succeed. Plaintiff thus fails to establish the second element of his malicious prosecution claim.

With respect to the third element of a malicious prosecution count—malice—plaintiff's claim also fails because the "existence of probable cause . . . precludes a finding of malice, as there is no 'improper motive' in following through on the prosecution of a defendant lawfully arrested." Husbands, 2007 U.S. Dist. LEXIS 61042, at *31 (citing Martin v. City of Albany, 42 N.Y.2d 13, 17 (1977)); see also Lowth, 82 F.3d at 573 (to establish malice, "the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served"). Here, having already found that defendants had probable cause to arrest Johnson and initiate his prosecution, the Court also concludes that Johnson has failed to establish the "malice" element of a malicious prosecution claim.

Accordingly, defendants are entitled to summary judgment on the malicious prosecution claim as well.[5]

---

[5] Because the Court finds, for the reasons set forth above, that Johnson's claim for false arrest and malicious prosecution pursuant to section 1983 fail as a matter of law, it grants summary judgment in favor

12

### C. Johnson's State Law Claims

Johnson also purports to raise claims for false arrest and malicious prosecution pursuant to New York state law. A New York state law claim for false arrest "is substantively the same" as a "[a] § 1983 claim for false arrest," Weyant, 101 F.3d at 852, and "[t]he existence of probable cause. . . is a complete defense . . . whether [the false arrest] action is brought under state law or under § 1983." Jenkins, 478 F.3d at 84 (internal quotations, citations omitted). Accordingly, because the Court has already found that defendants had probable cause for Johnson's arrest for purposes of the section 1983 claim, plaintiff's state law claim for false arrest also fails as a matter of law.

Plaintiff's state law malicious prosecution claim fails for similar reasons. As noted above, a section 1983 claim for malicious prosecution turns on establishing "conduct . . . that is tortious under state law" and thus requires a Court to determine whether a plaintiff can meet each of the elements of a state law malicious prosecution claim. Rohman, 215 F.3d at 215. Here, Johnson's section 1983 claim failed because he could not establish each of those elements—specifically, he could not establish either that defendants lacked probable cause to believe the proceeding could succeed, or that the defendants acted with malice. Since both would be equally necessary to Johnson's

---

of each City defendant. The Court takes note, however, that the complaint additionally fails to allege the individual involvement of defendant Kelly in any of the alleged constitutional deprivations which itself would be a basis for granting summary judgment in Kelly's favor on each of the section 1983 claims. See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (personal involvement is a "prerequisite to an award of damages under § 1983"); Sanders, 2009 U.S. Dist. LEXIS 7709, at *16 (failure to "allege with specificity the personal involvement of each named defendant in the alleged constitutional deprivations" warrants grant of summary judgment in defendants favor"). Similarly, with respect to the City itself, the complaint fails to allege "(i) the existence of a municipal policy or custom" and (ii) a "causal connection . . . between the policy and the deprivation of his constitutional rights." Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) (citing Oklahoma City v. Tuttle, 471 U.S. 808, 818-23 (1985)). Accordingly, even if Johnson could make out a claim with respect to Wubnig or Kelly, the City of New York would be entitled to a grant of summary judgment in its favor on all section 1983 claims.

independent state law claim for malicious prosecution, that claim also fails as a matter of law.

Accordingly, defendants are entitled to summary judgment on each of Johnson's state law claims as well.

### III.  CONCLUSION

Because the Court finds, with no issues of material fact in dispute, that each of Johnson's section 1983 and state law claims fails as a matter of law with respect to the City defendants, the motion for summary judgment is granted.

Dated: New York, New York
      June 7, 2010

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.

14